**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ELIZABETH N.,

            Plaintiff,

            v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

Civil Action No. 21-20778 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Elizabeth N.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Plaintiff's request for social security disability benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court remands the matter to the Administrative Law Judge ("ALJ") for further proceedings.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

I.   **BACKGROUND**

Plaintiff has suffered from seizures since she was a toddler. (AR 552.)[2] Now fifty years old, Plaintiff also suffers from degenerative disk disease, epilepsy, syncope, asthma, sleep apnea, and obesity. (AR 18.) For some or all of these disabilities, she has received disability insurance for some duration starting in December 1992. (AR 222.) Plaintiff has a high school education and reports working as a school lunch aide from October 2000 to June 2017 and as a retail associate from August 2010 to June 2018. (*Id.* at 209.) In all, she previously worked a few hours a week between her two part-time jobs. (*Id.*)

In 2018, Plaintiff stopped working due to a combination of experiencing seizures and adverse effects from heavy medication, on top of her other medical complications including strokes, asthma, and sleep apnea. (AR 20, 220.) Indeed, Plaintiff suffered a debilitating seizure while at work in 2017 that required immediate hospitalization. (AR 341.) Then, as one medical provider described it, Plaintiff's "frequency of seizures . . . increased since [October 2018] when [Plaintiff] started to get transient ischemic attack[s]," and she began "ha[ving] seizures about two to three times per month" with resulting loss of consciousness. (AR 256.) The following represents only those seizures that resulted in hospitalization after 2018:[3]

- **January 14, 2018**: Plaintiff was admitted to the emergency department for convulsive grand mal seizures.[4] (*Id.* at 374-85.)

- **October 10, 2018**: Plaintiff was hospitalized for two days for a partial seizure and a recent history of grand mal seizures. (*Id.* at 21 (citing Ex. 31F).)

---

[2] The Administrative Record ("AR") is found at ECF Nos. 4 through 4-20. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

[3] It appears that Plaintiff had four seizures from 2016 to 2017 that led to hospitalizations. (*See* AR 1257, 1132-36, 347, 361.)

[4] The Court understands that Plaintiff's January 2018 hospitalization predated the relevant period.

- **November 24, 2018**: Plaintiff was hospitalized for four days with "stroke-like symptoms." (*Id.* (citing Exs. 6F, 11F, 31F).)

- **February 11, 2019**: Plaintiff was admitted into the emergency department for complaints of a possible seizure. Two months earlier, Plaintiff's "medications were increased due to breakthrough seizures." (*Id.* at 22-23 (citing Exs. 8F, 22F).)

- **April 15, 2019**: Plaintiff was admitted to the emergency department for complaints of tonic-clonic seizures witnessed by her husband (the "Husband"). (*Id.* at 23 (Ex. 9F).)

- **August 9, 2019**: Plaintiff was admitted into the emergency department for three days due to "refractory seizures." (*Id.* at 24 (citing Ex. 25F).)

- **August 21, 2019**: Plaintiff was admitted to the emergency department with complaints of increased lethargy, back pain, and leg and arm weakness. (*Id.* (citing Ex. 19F).) She had a "right facial drop secondary to [a] recent [transient ischemic attack]." (*Id.*)

- **January 24, 2020**: Plaintiff was hospitalized for three days due to recurrent seizures. (*Id.* at 25 (citing Ex. 27F).)

- **January 30, 2020**: Plaintiff was hospitalized overnight for "multiple seizures at home." (*Id.* at 15 (citing Ex. 65F), 1409.)

- **July 7, 2020**: Plaintiff was hospitalized in the emergency department for seizures. (*Id.* at 26 (citing Ex. 32F).)

- **October 16, 2020**: Plaintiff entered the emergency department with stroke-like symptoms and was diagnosed with a seizure. (*Id.* (citing Exs. 64F, 65F).)

- **November 21, 2020**: Plaintiff was hospitalized for two days for recent seizures. While in the emergency department, Plaintiff had another seizure. (*Id.* (citing 30F).)

- **December 25, 2020**: Plaintiff was hospitalized after her Husband witnessed a seizure. The Husband reported more frequent seizures and increased aggressiveness. Plaintiff also experienced symptoms of delusions while in the hospital. (*Id.* at 26-27 (citing Ex. 29F).)

As early as August 2019, Plaintiff's Husband informed medical professionals that Plaintiff was having daily seizures. (*Id.* at 24 (citing Ex. 22F).) Because of her spike in "breakthrough seizures" and hospitalizations, treating providers increased Plaintiff's daily medications. (*Id.* at 22, 25-27.) With the increased medications came drawbacks: Plaintiff was "very drowsy on

3

medications" (*id.* at 24 (citing Ex. 22F/12)), sleepy (*id.* at 220), off-balance (*id.* at 24 (citing Ex. 21F/2)), unable to focus (*id.* at 220), and at times even determined by doctors to be overmedicated (*id.* at 24 (citing Ex. 22F/14)). So, Plaintiff contends that as a result she lost the ability to work. (*Id.* at 220.)

In this appeal, the Court addresses Plaintiff's contention that the ALJ made two erroneous findings not supported by substantial evidence. The Court considers these findings in turn. *First*, did the ALJ err by failing to adequately explain why Plaintiff did not meet the relevant criteria for the Listing of Impairments (the "Listings") 11.02 for epilepsy? (Pl.'s Appeal Br. 10-12, ECF 8.) *Second*, did the ALJ fail to adequately consider Plaintiff's seizure medication and the corresponding side effects, in addition to her inability to travel, when calculating Plaintiff's residual functional capacity ("RFC")? (*Id.* at 13-15.) As to the second question, the primary issue before the Court is whether substantial evidence supports the ALJ's decision that Plaintiff had an RFC to perform "sedentary work" with certain limitations regarding climbing, unprotected heights, hazardous machinery, and extreme environmental conditions. (*Id.* at 15 (citing AR 20).) Importantly, the Court must determine whether it can follow the reasoning and explanation behind the ALJ's written decision. The Court begins with a brief background of the procedural posture and decision by the ALJ.

### A.  Procedural Posture

Under 20 C.F.R. § 404.1563(c), Plaintiff was a "younger individual age 45-49, on the alleged disability onset date." (AR 29.) The Social Security Administration (the "Administration") denied her request for disability insurance benefits initially and on reconsideration. (*Id.* at 92-97, 101-03.) Thereafter, Plaintiff requested a hearing (*id.* at 104-05), and the ALJ held that hearing on November 4, 2020 (*id.* at 40-65). The ALJ issued a written opinion, where he determined that Plaintiff was not disabled. (*Id.* at 15-30.) Plaintiff appealed that decision, and the Administration's

4

Appeals Council affirmed the ALJ's decision. (*Id.* at 1-5.) The instant appeal followed. (ECF No. 1.) Plaintiff filed her opening brief on May 14, 2022 (ECF No. 8), and the Commissioner filed her opposition brief on June 23, 2022 (ECF No. 9). Plaintiff did not reply.

### B.     The ALJ's Decision

In the ALJ's May 4, 2021 written opinion, he determined that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 15-30.) In doing so, the ALJ set forth the five-step process for determining whether an individual is disabled. (*Id.* at 16-17 (citing 20 C.F.R. § 404.1520(a)).) At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since June 8, 2018, and that she met the insured status requirements through June 30, 2023. (*Id.* at 17 (citing 20 C.F.R. § 404.1571 *et seq.*).) At step two, the ALJ found that Plaintiff suffered from several severe impairments, including "degenerative disk disease, status post transient ischemic attack, epilepsy, syncope, asthma, sleep apnea, and obesity." (*Id.* at 18 (citing 20 C.F.R. § 404.1520(c)).) At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 18-20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) Prior to step four, the ALJ concluded that Plaintiff "ha[d] the residual functional capacity to perform sedentary work as defined in [the statute,]" with several exceptions to account for her impairments. (*Id.* at 20 (citing 20 C.F.R. § 404.1567(a)).) The ALJ then went on to find that Plaintiff "ha[d] no past relevant work" experience because the part-time positions she held amounted to minimal "earning records." (*Id.* at 29 (citing 20 C.F.R. § 404.1565), 47-48.) At the fifth step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (*Id.* at 29 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).)

This appeal turns on the ALJ's assessment at step three and his calculation of Plaintiff's RFC prior to step four. (*See generally* Pl.'s Appeal Br.) Specifically, Plaintiff first argues that the

"ALJ erroneously concluded that [Plaintiff] does not meet or equal a listed impairment." (*Id.* at 10.) No dispute exists that the ALJ found that Plaintiff did not meet the Listings notwithstanding her frequent seizures. (AR 18-20.) Doubling down, Plaintiff contends second that the ALJ, after properly finding that Plaintiff had no past relevant work, went on to err in failing to consider the consequences of her medications and inability to travel. (Pl.'s Appeal Br. 13-15.) The question before the Court is whether the ALJ's decision is supported by substantial evidence and adequately explained.

## II.  LEGAL STANDARD

### A.  Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotations omitted)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the court would have decided

differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B. Establishing Eligibility

To be eligible for disability insurance benefits, claimants must be unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(b). For the second step, claimants must establish that they suffer from

a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(c). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to disability insurance benefits. 20 C.F.R. § 404.1520(d). If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permits them to resume previous employment. *Id.* § 404.1520(e). If claimants' RFC permits previous employment, claimants are not "disabled" and not entitled to disability insurance benefits. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.*; 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, claimants will receive disability insurance benefits. *Id.*

### III.   DISCUSSION

Plaintiff appeals the Administration's Appeals Council's affirmance of the ALJ's decision, arguing that the ALJ erroneously found that Plaintiff's severe conditions—her seizures, in particular—failed to meet the Listings requirements that would end the inquiry and presume her disabled. (Pl.'s Appeals Br. 10-12.) Thus, Plaintiff stresses that remand is required. (*Id.* at 10) In addition, according to Plaintiff, the ALJ did not account for Plaintiff's medications when

calculating her RFC and specifically the severe impact they have on her ability to work. (*Id.* at 13-15.) The Court addresses each alleged error in turn.

    **A.    The ALJ's Decision Fails to Explain Why Plaintiff Does Not Meet the Listings at Step Three.**

The Court first addresses Plaintiff's argument that the ALJ's written decision inexplicably concludes that Plaintiff does not meet the Listings based on her seizures. (*Id.* at 10 (citing AR 18).) Specifically, Plaintiff takes issue with the ALJ's dearth of an explanation in concluding that the medical evidence fails to meet or equal the relevant Listing 11.02 criteria. (*Id.* (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).) Because the ALJ brushes over any analysis in reaching his conclusion at this step, Plaintiff argues, the Court must remand the matter for further proceedings. (*Id.*) Conversely, the Commissioner explains that the ALJ sufficiently detailed why Plaintiff failed to meet the Listings despite her frequent seizures. (Def.'s Opp'n Br. 13-19 (citing AR 26-27), ECF No. 9.) As to the Husband's testimony that Plaintiff was having daily seizures, which he relayed to medical professionals on multiple occasions, the Commissioner contends that the Husband's observations were too vague and lacked detail. (*Id.* at 17-18.) Thus, the Commissioner avers that affirmance is warranted. (*Id.* at 22.)

On this appeal the Court's review is deferential and the requirement of finding substantial evidence is a low bar. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Even so, the deferential standard presumes that the ALJ created an adequate record by setting "forth sufficient findings to satisfy the reviewing court that the ALJ arrived at a decision through application of the proper legal standards, and upon a complete review of the relevant factual record." *Rubinson v. Comm'r of Soc. Sec.*, 96 F. Supp. 3d 386, 394 (D.N.J. 2015).

The Court begins by evaluating the challenged Listing, which reads as follows:

> **11.02** Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

9

> A. Generalized tonic-clonic seizures (*see* 11.00H1a), occurring at least once a month for at least 3 consecutive months (*see* 11.00H4) despite adherence to prescribed treatment (*see* 11.00C) [or;]
>
> B. Dyscognitive seizures (*see* 11.00H1b), occurring at least once a week for at least 3 consecutive months (*see* 11.00H4) despite adherence to prescribed treatment (*see* 11.00C) [or;]
>
> C. Generalized tonic-clonic seizures (*see* 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (*see* 11.00H4) despite adherence to prescribed treatment (*see* 11.00C)[.]

(20 C.F.R. Sub. P., App. 1, §§ 11.02(A)-(C)). Thus, each subpart to Listing 11.02 requires (1) adherence to prescribed treatment and (2) meeting a set number of seizures based on the characteristics and symptoms of Plaintiff while experiencing those seizures. (*Id.*) For his part, after detailing the relevant Listings standards, the ALJ made one simple finding: "The medical evidence in this case does not indicate that the claimant suffers from generalized tonic-clonic seizures or dyscognitive seizures as described above." (AR 19.)

For starters, the touchstone of the Court's analysis is whether "the ALJ's decision, read as a whole," illustrates that the ALJ considered the appropriate factors in his step-three analysis and sufficiently described his conclusions to allow for meaningful judicial review. *Jones*, 364 F.3d at 505. So, the Court can consider the ALJ's reasoning beyond his cursory, one sentence explanation that the medical evidence does not support a Listings finding. Even so, at step three, ALJs typically must provide "some discussion" of their determination, although they "need not 'use particular language or adhere to a particular format in conducting [their] analysis,' as long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Jones*, 364 F.3d at 505). And should the Court find the ALJ's step-three analysis deficient as to certain

impairments, Plaintiff must provide reasons as to why she "might have prevailed at step three if the ALJ's analysis had been more thorough." *Id.*

With the standard set, the Court finds that the ALJ's written decision is not supported by substantial evidence. *First*, the ALJ acknowledged that Plaintiff followed her prescribed treatment plan. (*See* AR 15-30.) Indeed, the ALJ expressly noted that Plaintiff took her seizure medications and increased her dosages at her physicians' request. (AR 19-22.) Thus, Plaintiff complied with her treatment regimen as required by Listing 11.02.

*Second*, what remains is whether Plaintiff provided medical evidence that her seizures met the Listing requirements. The ALJ noted that Plaintiff was hospitalized for seizures on October 16, 2020; November 21, 2020; and December 25, 2020. (AR 26-27.) Thus, it appears that Plaintiff met Listing 11.02(A)'s frequency requirement because she suffered seizures in three subsequent months. (20 C.F.R. Sub. P., App. 1, §§ 11.02(A)). What's more, generalized tonic-clonic seizures are characterized by a loss of consciousness accompanied by a tonic phase and subsequent clonic phase. (*Id.* § 11.02H2.) The pertinent medical records corresponding with Plaintiff's October through December 2020 hospitalizations suggest that she suffered these types of medical manifestations. (*See* AR 1426 (October 2020 hospital visit for stroke-like symptoms of "numbness" and "facial droop" before physician diagnosed a "seizure"), AR 965 (November 2020 hospitalization for "multiple seizures" and experiencing a seizure while at the hospital), AR 928 (December 2020 hospitalization for seizures where Plaintiff was unresponsive and delusional, including an episode at the hospital).) And even though Listing 11.02 does not require hospitalization, Plaintiff nonetheless visited the emergency room in three consecutive months. (AR 26-27.) But the ALJ does not describe why these documented events fail to meet Listing 11.02, rendering the Court unable to conduct a meaningful review of the ALJ's reasoning. Perhaps he

found that the medical evidence did not reflect that Plaintiff lost consciousness or suffered memory loss. But the Court may not speculate as to the ALJ's reasoning.

In addition, the ALJ failed to confront the testimony of Plaintiff's Husband. (*See* AR 21.) The ALJ noted that the Husband testified as to his many hospital visits with Plaintiff when she experienced seizures. (*Id.*) The Husband also testified that once a month Plaintiff would have a seizure that results in body shakes, loss of memory, foaming at the mouth, and urination. (AR 56, 225.) Based on this description, Plaintiff appears to meet the requirements of Listing 11.02A, as well as the requirements for Listing 11.02B for dyscognitive seizures. (*Compare* 20 C.F.R. Sub. P., App. 1, § 11.02H1(b) ("Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control"), *with* AR 57 (describing that Plaintiff loses balance and looks "spaced out" with "glassy" eyes and no memory "seem[ingly]" every day).) Indeed, the Husband testified that Plaintiff experienced either a grand mal seizure, a petit seizure, or Todd's paralysis "every day basically." (AR 57.) But the ALJ does not grapple with any of the Husband's testimony or explain why it did not support Plaintiff's contention that she met Listing 11.02. The ALJ may have had good cause to reject the Husband's testimony and to find it insufficient to meet Listing 11.02's requirements, yet the Court is unable to determine why based on the written decision.[5] And although the Commissioner argues that the Husband's undetailed testimony was insufficient evidence to satisfy Listing 11.02, the Court disagrees. (AR 56 (the Husband testifying to Plaintiff's "full[] body shakes" and "twitching in her face"), AR 57 (the Husband testifying that Plaintiff fell, "space[d] out," "eyes are glassy," "memory is not . . . all there," [and] "no clue she

---

[5] What's more, at the time of his testimony, the Husband was an emergency medical technician with 16 years of experience, bolstering the reliability of his observations. *See* 20 C.F.R. Sub. P., App. 1, § 11.02H2 (the Commissioner "require[s] at least one detailed description of [claimant's] seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures").

had a seizure").) In any event, the Court cannot accept the Commissioner's after-the-fact justification that did not appear in the ALJ's decision. *Heise v. Astrue*, No. 09-5455, 2010 WL 3086445, at *11 (D.N.J. Aug. 2, 2010) ("Although [d]efendants attempt to justify the ALJ's decisions on additional grounds, the [c]ourt may not accept rationalizations that were not cited in the ALJ's opinion."). Moreover, Plaintiff demonstrates harmful error because a finding that she met the Listing criteria would end the disability inquiry. *See Holloman*, 639 F. App'x at 814. Remand is therefore warranted.[6]

### B. The ALJ's Decision as to Plaintiff's RFC is Inadequately Explained.

The ALJ found that Plaintiff can perform sedentary work. (AR 20-25.) On appeal, Plaintiff contends that the ALJ erred by failing to consider the serious and debilitating side effects of her seizure medications. (Pl.'s Appeal Br. 13-15.) Notwithstanding Plaintiff's heavy medications that leave her "always tired," Plaintiff argues that the ALJ neglected this reality in finding she can still perform sedentary work. (*Id.* at 14.) That is, Plaintiff alleges that the ALJ noted but ignored the impact Plaintiff's medications have on her ability to stay awake during the day and perform tasks. (*Id.* at 14-15.) For her part, the Commissioner argues that "the ALJ was aware of Plaintiff's medications, which he discussed in detail throughout his decision." (Def.'s Opp'n Br. 20 (citing AR 21-27).)

Given the Court's decision to remand this matter, much ink need not be spilled on the ALJ's assessment of Plaintiff's medications because the Court finds many of the same explanatory

---

[6] Plaintiff alternatively contends that her respiratory disorders medically equaled Listing 3.02D. (Pl.'s Appeal Br. 12.) In reaching this conclusion, Plaintiff argues that the Listing requires three instances of 48-hour hospitalizations within a one-year period. (*Id.*) But Plaintiff supports this argument with her seizure-related hospitalizations, not hospitalizations due to the respiratory disorders that Listing 3.02D mandates. (*Compare id.* (citing hospitalizations for transient ischemic attacks and epileptic seizures), *with* 20 C.F.R., Subpt. P, App. 1, § 3.02(D) (describing chronic respiratory requirements).)

13

shortcomings. The Commissioner conflates the ALJ's awareness of Plaintiff's medication-induced impairments with his reasoning (or lack thereof) as to why those medications did not prevent Plaintiff from maintaining employment. No doubt exists that the ALJ acknowledged Plaintiff suffered physical fatigue from her medications. (*E.g.*, AR 21 ("medications cause fatigue"), AR 24 ("clinician noted the claimant appeared very drowsy on medications"), *id.* (medical records reflected that Plaintiff reported drowsiness from current medication regimen).) Equally clear is that the ALJ understood Plaintiff's medications increased after 2018 due to her breakthrough seizures. (*Id.* at 22 ("Her medications were increased due to breakthrough seizures."), 23 ("She reported that her neurologist had recently increased her seizure medications.").) Perhaps the ALJ construed a few sentences from Plaintiff's October 2019 and February 2021 medical records to support that she can perform sedentary work—medical observations that Plaintiff "reported improved drowsiness" and "admitted to positive effects of medication." (AR 25, 27.) Thin as this justification would be, the ALJ's mere reference to these facts does not clarify whether he considered them in determining that Plaintiff can work while on her medications. (*See* AR 15-30.) But "[a]n ALJ must consider a claimant's testimony about the side effects of medication, and, if the ALJ rejects the testimony, he must explain his reasons for doing so." *Perrone v. Barnhart*, No. 07-1367, 2009 WL 742727, at *7 (D.N.J. Mar. 16, 2009) (citing *Stewart v. Sec'y of Health, Educ. and Welfare*, 714 F.2d 287, 290 (3d Cir.1983)); *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (ALJ must consider "dosage, effectiveness, and side effects of medication"). Because this type of explanation is wholly absent from the written decision (*see* AR 15-30) and "[t]he [C]ourt has to be able to trace the path of the ALJ's reasoning from evidence to conclusion," it finds substantial evidence lacking. *Britney S. v. Berryhill*, 366 F. Supp. 3d 1022, 1026 (N.D. Ill. 2019). Put differently, a "logical bridge from the evidence to the ALJ's conclusion" is required and the

Court finds that bridge absent here. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)).

Relatedly, and in tandem with the Court's findings above, the ALJ's written decision fails to address the Husband's contention that Plaintiff experienced daily seizures with lingering side effects that appear disruptive to maintaining full-time sedentary employment, to say the least.[7] (AR 24 ("Neurology records of August 9, 2019 state the claimant's [H]usband reported the claimant was having daily seizures.").) The Husband's testimony is bolstered by the medical record that supports "recent breakthrough seizures" starting in 2019. (AR 24 (citing Ex. 18F).) The ALJ may have disregarded the Husband's testimony or found him to be incredible. But it is not the role of this Court to speculate as to what the ALJ *could* have concluded.

Thus, on remand, the ALJ should address the above deficiencies.[8]

---

[7] The ALJ contended that he need not consider the Husband's testimony. (AR 29.) Then, within the next breath, the ALJ used the Husband's testimony to demonstrate Plaintiff's functionality. (*Id.* ("*See also* the Third Party Function Report of [the Husband], which describes activities generally consistent with the claimant's own reports.").) But "[t]he ALJ cannot 'pick and choose' the evidence upon which to decide a case, but must weigh all relevant, probative, and available evidence; and provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Quinn v. Kizakazi*, No. 20-1698, 2022 WL 178824, at *5 (M.D. Pa. Jan. 18, 2022). Moreover, because the relevant regulations allow nonmedical personnel to observe seizures to satisfy the Listing 11.02 requirements, the ALJ had to confront the Husband's testimony to some degree anyway. *See* 20 C.F.R. Sub. P., App. 1, § 11.02H2 (the Commissioner "require[s] at least one detailed description of [claimant's] seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures").

[8] Plaintiff also argues that the ALJ failed to consider her ability to commute to work. (Pl.'s Appeals Br. 15.) Because the ALJ need not consider Plaintiff's commute, the Court declines to address this argument. *See Hines v. Astrue*, No. 11-1318, 2012 WL 2679457, at *8 (D.N.J. July 6, 2012) ("[T]he ALJ was not required to determine that she could not return to her past work simply because her ability to commute to work was limited.").

## IV. CONCLUSION

For the above reasons, the Court will remand the written decision of the ALJ. The Court will issue an order consistent with this Memorandum Opinion.

                                                                                                           /s/ Michael A. Shipp
                                                                                                           MICHAEL A. SHIPP
                                                                                                           UNITED STATES DISTRICT JUDGE